# INTELLECTUAL PROPERTY,
## CONFIDENTIALITY & NONCOMPETITION AGREEMENT

This Agreement (the "Agreement") is entered into this 9th day of March, 2009, by the undersigned Joe Migneco ("Employee/Consultant") for the benefit of, and as a condition of Employee/Consultant's employment with, or engagement by, or continuing employment with, or continuing engagement by L-1 Identity Solutions, Inc. or one of its subsidiaries. For purposes of this Agreement, L-1 Identity Solutions, Inc. and its subsidiaries are hereinafter individually and collectively referred to as "Company".

WHEREAS, Company desires to employ Employee on at will basis, or engage Consultant to provide certain consulting services agreed-upon by the parties, as the case may be, (such at will employment relationship with Company, or such consulting relationship with Company, hereinafter referred individually and jointly to as the "Relationship"), but only so long as Employee/Consultant has agreed to certain provisions regarding (i) the parties' respective rights to any intellectual property arising out of the Relationship, (ii) the confidentiality of certain information pertaining to Company or any affiliate, partner or customer of Company, exchanged or received pursuant to the Relationship, and (iii) non-competition with Company during and for two years following cessation of the Relationship; and

WHEREAS, Employee/Consultant desires to accept such at will employment or consulting Relationship and is willing to agree to and abide by such provisions regarding intellectual property, confidentiality and non-competition;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises contained or contemplated herein, the sufficiency of which is hereby acknowledged, the Employee/Consultant hereby agrees as follows:

(1) I will make full and prompt disclosure to Company of all inventions, improvements, modifications, discoveries, methods, developments and ideas (all of which are collectively termed "Developments" hereinafter), whether patentable or not, made or conceived by me or under my direction during the Relationship whether or not made or conceived during my normal working hours or on the premises of Company.

(2) I agree that all Developments covered by Paragraph 1 and any patents or patent applications covering such Developments are the sole property of Company, and its assigns and I hereby assign to Company all right, title and interest in and to such Developments. In addition, I will execute and deliver any further assignments, patents, and applications, and other documents as Company may direct and to fully cooperate with Company to enable it to secure and patent or otherwise protect such Developments in any and all countries. I agree that I do not retain any right, title, interest or license to use such Developments.

(3) I hereby represent that, to the best of my knowledge, I have no present obligations to assign to any former employer or customer or any other person, corporation or firm, any Developments contemplated by Paragraphs 1 or 2.

(4) I will make full and prompt disclosure and delivery to Company of all writings, documents and other works of authorship (all of which are collectively termed "Works" hereinafter), whether subject to copyright protection or not, made by me or under my direction during the Relationship whether or not made during my normal working hours or on the premises of Company. Without limiting the generality of the foregoing, the term Works includes pictoral and graphic works, compilations, computer programs and derivative works based on such Works. I agree that all Works are works made for hire as that term is defined under the United States Copyright Act of 1976, as amended, and that Company shall be the exclusive owner of all right, title and interest in and to such Works including, but not limited to, all rights in copyright. In the event there are circumstances that result in the Works not being works made for hire under the Copyright Act, then I hereby assign to Company all right, title and interest in and to such Works, including, but not limited to, all rights in copyright and reproduction rights to all Works prepared by me in connection with the Relationship. In addition, I will execute and deliver any further assignments and other documents as Company may direct and to fully cooperate with Company to enable it to secure, perfect and otherwise protect such Works in any and all countries. I agree that I do not retain any right, title, interest or license to such Works.

(5) I will not disclose to Company or any Company affiliate, or induce Company or any Company affiliate to use, any confidential information of other persons, corporations, or firms, including my former employers or customers, if any.

(6) During the course of the Relationship with Company, I may learn of or become privy to trade secrets, proprietary information and other information and data considered by Company or a Company affiliate to be confidential or confidential information entrusted to Company or a Company affiliate by other persons, corporations, or firms (collectively, "Confidential Information"). Confidential Information includes, but is not limited to, matters not generally known outside of the entity providing such Confidential Information, such as specifications, designs, concepts, plans, programs, software, other developments relating to products and services, proposal plans, marketing data, and financial information. Absent the prior written consent of an authorized officer of Company, I agree (i) not to disclose any Confidential Information to any person or entity other than employees or agents of Company with a need to know such information, and (ii) not to make use of Confidential Information, except on behalf of Company, whether or not such information is produced by my own efforts. Also, I may learn of developments, ways of business, etc., which in themselves are generally known but whose use by Company or a Company affiliate is not generally known, and I agree not to disclose to others such use, whether or not such use is due to my efforts. I will use my best efforts to prevent the disclosure of any Confidential Information to third parties by employees or agents.

(7) I acknowledge and agree that in the course the Relationship, I will forge relationships with Company's customers and have access to significant Confidential Information and trade secret information belonging to Company. I further acknowledge and agree that Company's business is a highly specialized, technologically-advanced business with significant intellectual property serving a worldwide market. Accordingly, during the term of the Relationship and for two (2) years after expiration, termination or cessation of the Relationship for any reason whatsoever, I will not (unless otherwise approved in advance writing by the Chief Executive Officer of Company) become engaged by or act directly or indirectly on behalf of any other person, corporation or firm that competes directly or indirectly with Company in the business of biometrics, credentialing or ID management. For purposes of this Agreement, I agree that the term "business of

biometrics, credentialing or ID management" includes the business of, without limitation, research, analysis, design, development, manufacture, license, sale, marketing, distribution, deployment or any other form of commercialization whatsoever, of concepts, ideas, technology, software, hardware or services related to identification cards, drivers licenses, facial, skin, fingerprint, palm, iris or other forms of biometric matching, verification or identification, in any case in respect of which I worked and/or became familiar with or exposed to during the Relationship.

(8) During the term of the Relationship by Company and for two (2) years after expiration or termination of the Relationship, I will not (unless otherwise approved in advance writing by the Chief Executive Officer of Company) solicit or endeavor to entice away from Company, hire, or offer employment or any consulting arrangement to, any person or entity who is, or was within the one-year period immediately prior thereto, employed by Company, or otherwise interfere with any such person's relationship with Company. I understand that this Agreement does not prohibit me from making any general solicitation for employees or engaging in public advertising of employment opportunities (including through the use of employment agencies) not specifically directed to any of Company's directors, officers or employees, nor does this Agreement prohibit me from hiring any person who responds to any such general solicitation or public advertising.

(9) I acknowledge and agree that I have received a copy of, read and understand the Company's Statement of Business Ethics and Standards of Conduct in effect on the date hereof. In connection with the Relationship, I hereby agree to abide by the pertinent provisions of Company's Statement of Business Ethics and Standards of Conduct, as may be updated by Company from time to time.

(10) I hereby give Company and its assigns permission to capture and record my image or likeness by means of photograph, facial imaging or similar means ("Recordings"); to edit these Recordings at its discretion and to incorporate these Recordings into publications, brochures, databases, or any other media ("Publications"); and to use such Recordings and Publications for the limited purposes of marketing, publicizing, or otherwise promoting the products and/or services of Company or any of subsidiaries and affiliates.

(11) Upon expiration, termination or cessation of this Relationship for any reason whatsoever, I agree to leave with Company, all Confidential Information, Developments, Works, records, drawings, notebooks, and other documents pertaining to Confidential Information, Developments and Works whether prepared by me or others, and also any equipment, tools, or other devices and property owned by Company, then in my possession or control, however such items are obtained.

(12) My obligations under this Agreement shall survive the expiration, termination of the Relationship, regardless of the manner of the termination or cessation of the Relationship, and shall be binding upon my heirs, executors, and administrators.

(13) I further agree that Company shall have the right, in addition to any other right such party may have at law or equity, to an injunction, specific performance, or other equitable relief to prevent the violation or threatened violation of any of the provisions of this Agreement.

(14) This Agreement shall be governed by and construed in accordance with the laws of Connecticut, without regard to its conflict of laws provisions.

(15) If any provision of this Agreement shall be held invalid or unenforceable, that shall not affect the validity or enforceability of the remaining terms or provisions hereof. In addition, both parties agree that any court finding any term or provision hereof invalid or unenforceable shall have the authority to replace such term or provision with one that is valid and enforceable and that comes closest to expressing the parties' intentions with respect thereto, and this Agreement and such term or provision shall be enforceable as so modified.

(16) This Agreement replaces and supersedes, effective as of the date first written above, any prior intellectual property, non-disclosure and/or non-competition agreement that I may have entered into with Company. This Agreement may be amended or modified only with the written consent of both parties. No oral waiver, amendment or modification shall be effective under any circumstances whatsoever.

(17) Nothing contained in this Agreement, either expressed or implied, is intended to impose any obligation upon Company to employ or engage Employee/Consultant for any period of time and no contract or agreement for employment on consulting services shall be deemed to arise from this Agreement.

IN WITNESS WHEREOF, the undersigned has set his or her hand as of the day and year first written above.

EMPLOYEE/CONSULTANT

By [signature]

Name: Joe Mignano

3/9/09